## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | **FAITH TEMPLE, INC. a domestic corporation,** | ) ) ) |
| | **Plaintiff,** | ) ) |
| **v.** | | ) **Case No. 20-CV-13G** ) |
| (1) | **CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin Corporation, and** | ) ) ) ) |
| (2) | **LISA M. HOLLIDAY, P.E., PH.D,** | ) ) |
| | **Defendants.** | ) |

### PLAINTIFF'S MOTION TO REMAND AND BRIEF IN SUPPORT

**COMES NOW** the Plaintiff, Faith Temple, Inc. ("Plaintiff"), and submits its Motion and Supporting Brief to Remand this removed civil action to the Cleveland County District Court ("Cleveland County") pursuant to 28 U.S.C. §1447(c).

### INTRODUCTION

This is an insurance bad faith and breach of contract cause of action that the Plaintiff properly commenced against the Defendant, Church Mutual Insurance Company ("CMIC") and negligence action against Lisa M. Holliday P.E./Ph.D. ("Holliday"), an individual retained by CMIC to perform inspection and adjustment duties following the Plaintiff's insurance claim. More precisely, on October 18, 2018, a torrential storm struck the Norman, Oklahoma area, bringing with it devastating winds and hail. The damage from the storm affected numerous structures, including the Plaintiff, a church located outside of Norman and home to hundreds of congregants. To protect itself from the possibility of such

1

a catastrophic occurrence, the Plaintiff purchased property damage insurance from CMIC that covered weather-related damage.

It is undisputed that the Plaintiff possessed coverage, that this event was covered, and that the event occurred during the covered period. It is also undisputed that the Plaintiff timely reported its claim to CMIC, and cooperated throughout the period of time CMIC purportedly adjusted this claim. What is before the Court, however, is a product of a scheme between CMIC and Holliday in which they cooperate with one another to intentionally undervalue insurance claims in property damages case to deprive insureds benefits under insurance policies. This greed-driven relationship has been going on for years, during which they both profited substantially at the expense of the innocent insureds.

What happened in this case is the quintessential insurance bad faith case. CMIC dispatched Holliday, an employee of a separate national consulting group officing in Oklahoma City, to "adjust" the Plaintiff's insurance claim. Notably, the extent of the property damage caused by the storm. Upon her arrival, Holliday represented herself as an Oklahoma licensed engineer with a doctorate degree—not as an insurance adjuster—and led the Plaintiff to believe she was performing a legitimate, objective, and professional service. The Plaintiff believed her. Regrettably, Holliday had no intention of ever performing a reasonable inspection of this property or even attempt to fairly evaluate the extent of damage—both acts completely violative of her legal and statutory duties as an Oklahoma professional engineer. Indeed, the evidence, including expert testimony, will be that her actions were so far beyond the course and scope of her duties that such are actionable regardless of the non-delegable duties CMIC has as an insurer.

Before the Court is the Defendants' Notice to Remove, in which they acknowledge that Holliday is not diverse from the Plaintiff. This normally would prohibit any federal district court from asserting subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §1332. However, the Defendants suggest in its Notice that the Plaintiff's claims against Holliday is tantamount to "fraudulent joinder," thereby justifying this Court to still assert diversity jurisdiction. The allegations in the Plaintiff's Second Amended Petition ("SAP") against Holliday, however, in the light most favorable to it, speak otherwise. For these reasons, and those herein discussed, the Court should remand this matter to the forum of origination--Cleveland County.

ARGUMENT AND AUTHORITY

## I.   Law Relating to Removal and Remand

In *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2006), this Circuit reminded that "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed." *Accord*, *Evans v. Metro. Prop. & Cas. Ins. Co*., 2013 U.S. Dist. LEXIS 180330, *2-3, 2013 WL 6835287 (W.D. Okla. 2013)(Judge Joe Heaton). There is a presumption against removal jurisdiction, and doubtful cases must be resolved in favor of remand. *Laughlin v. K-Mart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). *Accord*, *Three RP L.P. v. Dick's Sporting Goods, Inc*., 2018 U.S. Dist. LEXIS 117454, *3 (E.D. Okla. 2018). Indeed, the Western District of Oklahoma aptly explained this maxim forty years ago as follows:

> As Plaintiff's motion to remand is presently before the Court, the burden of proof is on the Defendants, as the removing parties, to show that this action was properly removed. *P. P. Farmers' Elevator Co. v. Farmers*

3

> *Elevator Mutual Insurance Co.*, 395 F.Supp 546 (7th Cir. 1968); *Williams v.*
> *Tri-County Community Center*, 323 F.Supp. 286 (S.D.Miss.1971), Aff'd,
> 452 F.2d 221 (5th Cir. 1971); *Heymann v. Louisiana*, 269 F.Supp. 36
> (E.D.La. 1967). **Where there is any substantial doubt concerning**
> **jurisdiction of the federal court on removal, the case should be**
> **remanded and jurisdiction should be retained only where it is clear.**
> *See Shamrock Oil & Gas Co. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85
> L.Ed. 1214 (1941); *Morrison v. Jack Richards Aircraft Co.*, 328 F.Supp.
> 580 (W.D.Okl.1971); *Williams v. Tri-County Community Center*, *supra*;
> *see Jerro v. Home Lines, Inc.*, 377 F.Supp. 670 (S.D.N.Y.1974).

*Town of Freedom, Okl. v. Muskogee Bridge Co., Inc.*, 466 F.Supp. 75, 77 (W.D. Okla.

1978) (Citations in original; **Emphasis** added); *See also*, *Karnes v. Boeing Co.*, 335 F.3d

1189, 1193 (10th Cir. (Okla.) 2003). In considering a motion to remand, the court construes

all factual allegations in favor of the party seeking remand. *White v. City of Grandview*

*Plaza*, 2017 U.S. Dist. LEXIS 77468, *7-8, 2017 WL 2215133 (D. Kan. 2017); *One Sylvan*

*Rd. N. Assocs. v. Lark Int'l*, 889 F. Supp. 60, 62 (D. Conn. 1995)

## II.    Remand is Justified—No Diversity of Citizenship

### A.    There Is No Complete Diversity Among the Parties

To begin, 28 U.S.C. §1441(B), Removal Based on Diversity of Citizenship, states

> (2)    A civil action otherwise removable solely on the basis of the
> jurisdiction under section 1332(a) of this title [28 USCS §
> 1332(a)] may not be removed if any of the parties in interest
> properly joined and served as defendants is a citizen of the
> State in which such action is brought.

Consistent with the foregoing, "[r]emoval under 28 U.S.C. § 1441 is proper only if the

federal district court would have had original jurisdiction if the case was filed in  federal

court" with this "jurisdictional prerequisite…an absolute, non-waivable requirement."

*Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1244-45 (10th Cir. (Colo.) 2005), *citing. Brown v. Francis*, 33 V.I. 385, 75 F.3d 860, 864 (3rd Cir. 1996).

Foremost, there is no dispute that the amount in controversy is in excess of $75,000.

The Plaintiff concedes that CMIC is a foreign insurance company (Wisconsin), and is diverse from it. Holliday, however, upon information and belief, resides and is domiciled within the boundaries of the Western District of Oklahoma and is thus not diverse from the Plaintiff. Certainly the Defendants concede there is no diversity of citizenship as to Holliday given her believed residency and domiciliary. That stated, it is not the Plaintiff's fault that Holliday lives in Oklahoma, that CMIC reached out to her to perform whatever services it needed in order to investigate the Plaintiff's insurance claim, or that she would investigate and render what amounts to expert opinions under the office of her professional engineering license. These agreements between the Defendants have no legal significance as to whether the Plaintiff is permitted to treat them separately and allege claims specific to each.

### B.     There is No Fraudulent Joinder

#### 1.     Law Governing and its Application

A plaintiff is "master of [its] claims and may choose to have [its] claims heard in state court by avoiding claims based on federal law." *Karnes*, *supra*, 335 F.3d at 1193.  A defendant's right to remove and plaintiff's right to choose forum are not on equal footing. *Barber v. Albertsons, Inc*., 935 F.Supp. 1188, 1189 (N.D. Okla. 1996). To defeat diversity jurisdiction, the Defendants without any analysis or explanation make the following averments in its Notice or Removal:

      8.     Dr. Holliday was a structural engineer that was retained by Church Mutual to investigate the underlying loss.

      9.     Plaintiff has fraudulently joined Defendant, Dr. Holliday, in order to try and defeat diversity jurisdiction.

[**Dkt.#1, Notice of Removal, p. 2**].

In order to prove fraudulent joinder, the Defendants must show that the Plaintiff either: (1) committed outright fraud in pleading the jurisdictional facts, or (2) has no possibility of recovery against the nondiverse defendant. *Slover v. Equitable Variable Life Ins. Co.*, 443 F.Sup.2d 1272, 1276 (N.D. Okla. 2006), *citing*, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992). In this connection, "[t]he burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000); *Accord*, *Montano v. Allstate Indem.*, 2000 U.S. App. LEXIS 6852, *4-5, 2000 WL 525592 (10th Cir. 2000). *See also*, *Newman v. VFS US LLC*, 2018 U.S. Dist. LEXIS 63591, *3 (W.D. Okla. 2018)(Judge Vicki Miles-LaGrange). Although the court can examine the pleadings to adjudicate a fraudulent joinder defense, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Smoot v. Chicago, R. I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967)(Citations omitted).

To their credit, the Defendants do not suggest that the Plaintiff has engaged in "outright fraud" in pleading its jurisdiction facts in its SAP. What's left for this Court, therefore, is whether the Plaintiff has stated its claims consistent with federal notice pleading requirements. Along those lines, the court determines "whether that party has any

possibility of recovery against the party whose joinder is questioned." *Montano*, *supra*. In this process, the court considers if there is a reasonable basis to believe the plaintiff might succeed against the nondiverse defendant (Holliday).  A "reasonable basis" means just that: a claim need not be a sure thing, but it must have a basis in the alleged facts and the applicable law. *Nerad v. AstraZeneca Pharms., Inc*., 203 Fed. Appx. 911, 913, 2006 U.S. App. LEXIS 25549, *6-7 (10th Cir. (W.D. Okla.) 2006). Indeed, "[i]f there is even a possibility that a state court would find the complaint states a cause of action against the nondiverse defendant, the federal court must find joinder was proper and remand the case to state court." *Mattocks v. State Farm Fire & Cas. Co*., 2015 U.S. Dist. LEXIS 31024, *2-3 (W.D. Okla. 2015)(Judge LaGrange), *citing*, *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3rd Cir. 1992).

In a typical fraudulent joinder situation, a non-diverse defendant is allegedly improperly joined to an action to prevent other diverse defendants from removing the case to federal court pursuant to 28 U.S.C. §1441. As discussed below, the Plaintiff alleges Holliday engaged in tortious activity in her capacity as a licensed engineer in Oklahoma. It believes additional discovery will reveal Holliday committed other acts that were outside the scope of her relationship or impose individual liability on her.

### 2.    The Plaintiff's Claim Against Holliday Are Cognizable and Actionable

The familiar elements of a negligence cause of action were restated by Oklahoma's Supreme Court as: "(1) existence of a duty on defendant's part to protect plaintiff from injury; (2) violation of that duty; and (3) injury resulting therefrom." *Grover v. Superior Welding, Inc*., 1995 OK 14, ¶5, 893 P.2d 500, 502, *citing*, *Nicholson v. Tacker*, 1973 OK

75, ¶9, 512 P.2d 156, 158; *Wofford v. Eastern State Hospital*, 1990 OK 77, ¶8, 795 P.2d

516, 518. In discussing a person's legal duty, Oklahoma's Court of Civil Appeals in *Smith*

*v. Speligene*, 1999 OK CIV APP 95, ¶11, 990 P.2d 312, 315 pointed out that:

> The general rule is that a defendant owes a duty of care to all persons who
> are foreseeably endangered by his conduct with respect to all risks which
> make the conduct unreasonably dangerous. Foreseeability as an element
> of duty establishes a zone of risk, that is, whether the conduct "creates a
> generalized and foreseeable risk of harming others. When a defendant's
> conduct creates a foreseeable zone of risk, the law generally will recognize
> a duty placed upon defendant either to lessen the risk or see that sufficient
> precautions are taken to protect others from harm that the risk imposes.

[Citations and punctuation omitted]. *Iglehart v. Board of County Com'rs of Rogers County*,

2002 OK 76, ¶10, 60 P.3d 497, 502. Last, as a general rule a defendant owes a duty of care

to everyone who is foreseeably endangered by his or her conduct with respect to all risks

which make the conduct unreasonably dangerous. *Wofford*, ¶11, 795 P.2d at 519. The issue

of legal duty, and negligence generally, was perhaps best summed up by Oklahoma's

Supreme Court in *Chicago, R.I. & P. R. Co. v. Hawes*, 1967 OK 26, ¶10, 424 P.2d 6, 10 as

follows:

> This court has often reiterated—and it is the general rule—that where the
> standard of human conduct by which the parties' negligence, or their lack
> of it, is not prescribed by law, the determination of the matter must be left
> to the jury. *Thompson v. Hertz Corp.*, Okl., 366 P.2d 752, 754. See also
> *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668,
> therein quoted, in which the court said:
>
> > 'Surveyors can measure an acre. But measuring negligence is
> > different. The definitions of negligence are not definitions at all,
> > strictly speaking. Usually one discussing the subject will say that
> > negligence consists of doing that which a person of reasonable
> > prudence would not have done, or of failing to do that which a person
> > of reasonable prudence would have done under like circumstances.
> > Issues of negligence, therefore, call for the exercise of common

> sense and sound judgment under the circumstances of particular
> cases. '(W)e think these are questions for the jury to determine. We
> see no reason, so long as the jury system is the law of the land, and
> the jury is made the tribunal to decide disputed questions of fact,
> why it should not decide such questions as these as well as others.'
> *Jones v. East Tennessee, V. & G.R. Co*., 128 U.S. 443, 445, 9 S.Ct.
> 118, 32 L.Ed. 478, 480 (1888). * * *.'

[Citations in original]. Finally, while foreseeability is certainly a factor in determining

one's legal duty,  there are numerous other considerations, as Oklahoma's Supreme Court

in *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 2014 OK 106, ¶22, 341 P.3d 75,

83, authority discussed extensively in Holliday's motion to dismiss, explained:

> While the question of duty is usually presented in terms of a particular
> actor's obligation, this Court has previously noted that the essential
> question is whether the plaintiff's interests are entitled to protection
> against the defendant's conduct. The foreseeability of harm to the potential
> plaintiffs as a result of an individual's conduct is one of the most important
> considerations used to determine the existence of a legal duty. However,
> foreseeability is just one of many factors that this Court considers and
> other factors include: 1) the degree of certainty of harm to the plaintiff; 2)
> the moral blame attached to defendant's conduct; 3) the need to prevent
> future harm; 4) the extent of the burden to the defendant and consequences
> to the community of imposing the duty on defendant; and 5) availability
> of insurance for the risk involved

*Accord*, *Lowrimore v. Severn Trent Envtl. Servs., Inc.*, 2016 WL 2858822, at *1–2 (E.D.

Okla. 2016). *See also*, *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶14, 160 P.3d 959,

964 ("In determining the legal question of the existence of a duty of care, the court

considers policy factors that lead the law to say a particular plaintiff is entitled to

protection.").

As this Court can read in the SAP, the action against Holliday sounds in professional

negligence, and in most professional negligence actions unless the facts are such that they

9

are within a person's common understanding expert testimony is required. <u>In medical malpractice actions</u>: *Benson v. Tkach*, 2001 OK CIV APP 100, ¶10, 30 P.3d 402, 404 ("[W]hen a patient sues a physician for failure to properly diagnose or treat the patient, the issue of fact is one of science and must be established and determined upon the testimony of skilled, professional witnesses."). <u>In architecture malpractice cases</u>: *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980)("[I]n the majority of cases involving an architect's liability for harm, there can be no finding of negligence unless there is expert testimony to support it, because laymen would be unable to understand highly technical architectural requirements without hearing other architects."). Specific to professional engineers, in *Yantzi v. Norton*, 927 S.W.2d 427, 432 (Mo. Ct App. 1996) this Missouri appellate court explained:

> [W]here persons with varying types of professional credentials are competent to work in a particular field, such as the design of surface water systems, then the issue of their competence should be judged by whether they meet the minimum standards of that field. Such knowledge is within the expertise of all of those who are qualified to act in that field. For this reason they should be judged not by some standard of care particular to the educational degree or professional license they happen to hold, but rather by the standard applicable to the field in which they have chosen to engage.

*See also*, *Luther v. City of Winner*, 2004 SD 1, ¶12, 674 N.W.2d 339, 345 (Failure to present expert testimony on the professional standard of care for an engineer found fatal to claim); *Carter v. Deitz*, 556 So. 2d 842, 869 (La. Ct. App. 1990). It would be unusual that Holliday would contest the need for expert testimony in this case.

Applying the foregoing to the case at hand, the Plaintiff alleges against Holliday in its SAP:

11.   Defendant Holliday was hired by Defendant Church Mutual to investigate the damages caused by the Loss and consult with Defendant Church Mutual on coverage. Church Mutual hired Defendant Holliday to inspect the damages and measure, document, estimate and adjust the damages to the property. Her testimony was utilized by Defendant Church Mutual in its decision to deny payment of Plaintiff's claim.

12.   Defendant Holliday has been used by Defendant Church Mutual on other claims and has provided it with bases to deny full payment on other claims….

23.   Plaintiff alleges as follows against Defendant Holliday:

a)   Defendant Holliday, as an Oklahoma licensed professional engineer, has a superior knowledge and understanding of storm damage, structures, and materials and was best positioned to review and make recommendations to Defendant Church Mutual and wholly failed to do so;

b)   Defendant Holliday failed to provide an objective and unbiased opinion of the dwelling's post-storm condition and date of loss;

c)   Defendant Holliday failed to apply the practices of engineering in the public interest in order to safeguard life, health and property and to promote the public welfare, as required by the Oklahoma State Board of Licensure for Professional Engineers and Land Surveyor.

As a preliminary matter, the above sets forth the *prima facie* elements of a common law negligence claim against Holliday, and such are supported by allegations that she owed the Plaintiff a specific legal duty in her capacity as a professional engineer. This alone satisfies the plausibility requirements under the familiar *Twombly*/*Iqbal* standard. More importantly, the evidence will be that Holliday made specific representations to the Plaintiff's employees and agents regarding her services, which they relied upon. This

included representing to it that she was <u>not</u> there to adjust the claim, as CMIC seems to claim, but to inspect the extent of damages to the physical structure of the church. The evidence will certainly *not* be that the Plaintiff believed Holliday's determinations would be the "final word" as to coverage. The evidence is also her conclusions as to the extent of damages were wrong, and the process she undertook to reach such conclusions were a violation of the standard of care as a professional engineer. Still, the suggestion that her acts must as a matter of law be imputed on CMIC is unsupported, even by the Defendants' predominant legal authority, *Trinity Baptist*, *supra*, discussed in Holliday's motion to dismiss.[1]

Next, Holliday argued in its motion to dismiss that as a matter of law all her acts or omissions are necessarily those acts of CMIC, and because it owes nondelegable duties to the Plaintiff as its insurer, she can never have individual liability. [**Dkt.#3, pp. 4-9**]. In making this argument, Holliday necessarily tell this Court that under no factual circumstances could she ever act outside the scope of her engagement with CMIC, and that she can freely breach/violate any duties she owed specifically to the Plaintiff or anyone in this state as a licensed professional engineer. This cannot be the case. Regardless, as Holliday's tortious actions are plainly a fact intensive inquiry, <u>at best</u> this is a question to

---

[1] In *Trinity Baptist*, the determined issues were a result of a motion for summary judgment, after discovery had concluded and evidentiary material proffered that set forth the legal relationship between the insured and the independent adjuster. Thus far, no discovery has been undertaken, and which is typical in insurance bad faith cases, evidentiary material CMIC possesses has not been produced. Furthermore, Holliday is not simply an independent insurance adjuster, as was the circumstance in *Trinity Baptist*, but rather a licensed Oklahoma engineer having enumerated legal duties she owes to the Plaintiff and other duties requiring expert testimony to establish.

be resolved at summary judgment as was *Trinity Baptist*—not an "accepted" or settled fact for purposes of removal jurisdiction. Along those lines, the Plaintiff anticipates providing this Court expert testimony to establish the standards of care for professional engineers in Oklahoma, that Holliday deviated from such standards, and that this deviation was the direct and proximate cause of its damages. The Plaintiff is absolutely entitled to assert its claims against Holliday given these circumstances, and Holliday is free to defend such claims just as in any professional negligence case. What is <u>not</u> permitted, however, is the Defendants' effort to unilaterally dispose of the Plaintiff's claims via an affirmative defense of agency, which effectively deprives the Plaintiff of being the "master of its claims." *Karnes*, *supra.*

Finally, the idea that CMIC can outright absorb Holliday's liability is unsupported by the factual record. At no point did CMIC inform the Plaintiff that Holliday was its "insurance adjuster" or her work would impact the decision as to coverage or payment of the claim. It is only now, when it is convenient, that this become CMIC's position. More importantly, CMIC and Holliday are once again collaborating with each other to the benefit of CMIC and to the detriment of the Plaintiff. Regardless, the Plaintiff has asserted a viable cause of action against Holliday, an Oklahoma resident and non-diverse from it, leaving this Court no alternative but to remand the case to Cleveland County.

In sum, the Defendants' position that Holliday's conduct, regardless whether it was negligent or even outside the scope of her statutory duties as a professional engineer, are imputed onto CMIC via its non-delegable duties as an insurer must not be sustained.

13

**III.    The Insurance Policy Permits the Plaintiff to Choose its Jurisdiction—Removal Waived**

      **A.    Law Governing Insurance Policy Interpretation**

Oklahoma's Supreme Court discussed adhesion contracts as follows:

> An adhesion contract is a standardized contract prepared entirely by one party to the transaction for the acceptance of the other. These contracts, because of the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected on a "take it or leave it" basis without opportunity for bargaining-the services contracted for cannot be obtained except by acquiescing to the form agreement.

*Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 1996 OK 28, ¶7, 912 P.2d 861, 864; *See also*, *M.J. Lee Const. Co. v. Oklahoma Transp. Authority*, 2005 OK 87, ¶12, 125 P.3d 1205, 1210-11, n. 9.

      Specific to contracts of insurance:

> Insurance contracts are contracts of adhesion. An insurer has the advantage of drafting the contract and holds an uneven bargaining position. Consequently, any ambiguity in the language of the contract must be strictly construed against the insurer.

*Haworth v. Jantzen*, 2006 OK 35, ¶19, 172 P.3d 193, 198. *Accord*, *ABAB, Inc. v. Starnet Ins. Co.*, 2014 U.S. Dist. LEXIS 150971, *6-8 (W.D. Okla. 2014)("[U]nder Oklahoma law, an insurance policy is a contract of adhesion, and as such, ambiguities and uncertainties in the exclusionary words must be construed strictly against the insurer."); *Nationwide Mut. Ins. Co. v. Prater*, 638 Fed. Appx. 659, 664 (10th Cir. (W.D. Okla. 2015); *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶¶10-11, 812 P.2d 372, 376 ("An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible.")

Adhesion contracts are "are interpreted most strongly against the drafter of the instrument as it strengthens the "nondrafter's contracting position." *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co*., 1997 OK CIV APP 58, ¶12, 947 P.2d 594, 597. This view is consistent with how contracts are generally interpreted. *Cleveland v. Dyn a Mite Pest Control, Inc*., 2002 OK CIV APP 95, ¶42, 57 P.3d 119, 129 ("If terms in the contract are ambiguous, it must be construed against the drafter of the contract.").

Certainly, at motion to remand, this Court cannot determine as a matter of fact or law the parties did not negotiate these two provisions or that they do *not* contemplate the Plaintiff having the right to determine the jurisdiction of this proceeding.

**B.    Law Governing Insurance Policy Jurisdiction Provisions**

In the Tenth Circuit, "forum selection provisions are *prima facie* valid and will be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992). *See*, *Fleming Bldg. Co., Inc. v. Columbia Cas. Co.*, 751 F. Supp.2d 1218, 1219 (N.D. Okla. 2010); *General Phoenix Corp. v. Malyon*, 88 F.Supp. 502 (S.D.N.Y. 1949). Assuredly, "[p]arties are free to bind themselves to forum selection clauses that trump what would otherwise be a right to remove cases to federal court." *Dinallo v. Dunav Ins. Co.*, 672 F.Supp.2d 368, 370 (S.D.N.Y. 2009).

**C.    Fact Question as to CMIC's Waiver of Removal Rights**

The insurance policy issued by CMIC to the Plaintiff contained the following clauses:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.
>
> If you and we disagree on the amount of the "loss," either may demand an appraisal of the "loss." In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.

[**Exhibit 1,** *Selected Pages of Insurance Policy*].  While not titled a "service of suit" clause in the insurance policy, the above language certainly has the effect of such. Furthermore, the Plaintiff is entitled to rely on these provisions during the process of obtaining coverage with CMIC, deciding whether to purchase coverage with CMIC and foregoing other companies, and to seek relief in the Court of its choosing consistent with the policy.

There is no question that the Cleveland County District Court is a court of competent jurisdiction in the United States, and these provisions, interpreted in favor of the Plaintiff and against CMIC, plainly anticipates that the Plaintiff would seek relief in that jurisdiction. More so, the very subject of the Plaintiff's cause of action is CMIC's refusal to properly adjust or make a reasonable determination as to the amount of its "loss." This circumstance is expressly contemplated by these clauses.

## Conclusion

A federal district court does not have subject matter jurisdiction where there is a lack of diversity. *Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. (Colo.) 2005). This is precisely the situation before this Court, as Holliday is not

diverse from the Plaintiff, and that it has asserted cognizable claims against her in her professional capacity. There is no basis for this Court to continue asserting its jurisdiction.

**WHEREFORE**, premises considered, the Plaintiff Faith Temple, Inc. prays the Court to enter an Order remanding this case to the Cleveland County District Court; award it all accrued and accruing attorneys' fees and costs in seeking this relief, and award it any other relief deemed lawful and equitable.

Respectfully submitted,

By: */s/ A. Laurie Koller*
A. Laurie Koller, OBA #16857
Rusty Smith, OBA #19575
Ben Baker, OBA #21475
Michael Barkett, OBA#16171
Spartan Law Group
320 South Boston, Suite 1130
Tulsa, Oklahoma 74103
laurie@kollertriallaw.com
(918) 216-9596
(918) 248-8238 Fax

-and-

Eric Anthony Mareshie, OBA#18180
E. ANTHONY MARESHIE, P.L.L.C.
P.O. Box 330161
Tulsa, Oklahoma 74133-0161
tulsalegal@gmail.com
(918) 519-3771 - Telephone
(918) 970-6927 – Facsimile
***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on February 4, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew K. Felty
mkfelty@lytlesoule.com

Kenyatta R. Bethea
kbethea@hblaw.com

                                      /s/ A. Laurie Koller_____